Jeremy S. Sussman
THE LAW OFFICES OF JEREMY S. SUSSMAN
225 Broadway, Suite 3800
New York, NY 10007
Telephone: (646) 322-8373

*Proposed Counsel for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
|    Lomax Hacking Corp., | ) | Case No. 15-41787 (NHL) |
| | ) | |
|      *Debtor.* | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
|    Loup Hacking Corp., | ) | Case No. 15-41788 (NHL) |
| | ) | |
|      *Debtor.* | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
|    Phanero Hacking Corp., | ) | Case No. 15-41789 (NHL) |
| | ) | |
|      *Debtor.* | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
|    Sice Mois Hacking Corp., | ) | Case No. 15-41790 (NHL) |
| | ) | |
|      *Debtor.* | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
|    Topush Hacking Corp., | ) | Case No. 15-41791 (NHL) |
| | ) | |
|      *Debtor.* | ) | |

## NOTICE OF HEARING ON DEBTORS' FIRST DAY MOTION FOR
## (I) ENFORCEMENT OF BANKRUPTCY CODE SECTIONS 542(a) AND 543(b), AND (II) JOINT ADMINISTRATION OF RELATED CASES

**PLEASE TAKE NOTICE** that a hearing on the annexed *Debtors' First Day Motion For (I) Enforcement of Bankruptcy Code Sections 542(a) and 543(b), and (II) Joint Administration of Related Cases* (the "Motion") will take place before the Hon. Nancy Hershey Lord, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein U.S. Courthouse, 271 Cadman Plaza East, Brooklyn, NY 11201 (the "Bankruptcy Court") on the **May 7, 2015 at 4:00 P.M.** (New York Time) or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing and filed with the Clerk of the Bankruptcy Court, with copy delivered to (i) Hon. Nancy Hershey Lord, U.S. Bankruptcy Court, EDNY, Conrad B. Duberstein Courthouse, 271 Cadman Plaza East - Suite 1595, Brooklyn, NY 11201-1800; (ii) Office of the United States Trustee, EDNY (Brooklyn Office), U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; and (iii) The Law Offices of Jeremy S. Sussman, Attn: Jeremy Sussman Esq., 225 Broadway, Suite 3800, New York, New York 10007; in all cases so as to be received no later than **May 6, 2015 at 4:00 P.M.** (New York Time) (the "Objection Deadline).

**PLEASE TAKE FURTHER NOTICE** that if no objections are filed by the

Objection Deadline, the Court may enter an order approving the Motion without a hearing.

Dated:   New York, NY
         May 2, 2015

                                THE LAW OFFICES OF JEREMY S. SUSSMAN

                                By: /s/ Jeremy S. Sussman_____
                                     Jeremy S. Sussman
                                     225 Broadway, Suite 3800
                                     New York, NY 10007
                                     (646) 322-8373

                                *Proposed Counsel for the Debtors*

Jeremy S. Sussman
THE LAW OFFICES OF JEREMY S. SUSSMAN
225 Broadway, Suite 3800
New York, NY 10007
Telephone: (646) 322-8373

**Hearing Date**: May 7, 2015 at 4:00 P.M.

**Objection Deadline**: May 6, 2015 at
4:00 P.M.

*Proposed Counsel for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lomax Hacking Corp., | Case No. 15-41787 (NHL) |
| *Debtor.* | |
| In re: | Chapter 11 |
| Loup Hacking Corp., | Case No. 15-41788 (NHL) |
| *Debtor.* | |
| In re: | Chapter 11 |
| Phanero Hacking Corp., | Case No. 15-41789 (NHL) |
| *Debtor.* | |
| In re: | Chapter 11 |
| Sice Mois Hacking Corp., | Case No. 15-41790 (NHL) |
| *Debtor.* | |
| In re: | Chapter 11 |
| Topush Hacking Corp., | Case No. 15-41791 (NHL) |
| *Debtor.* | |

TO:    THE HONORABLE NANCY HERSHEY LORD,
       UNITED STATES BANKRUPTCY JUDGE

**DEBTORS' FIRST DAY MOTION FOR (I) ENFORCEMENT OF
BANKRUPTCY CODE SECTIONS 542(a) AND 543(b), AND (II) JOINT
ADMINISTRATION OF RELATED CASES**

Lomax Hacking Corp., Loup Hacking Corp., Phanero Hacking Corp., Sice

Mois Hacking Corp., and Topush Hacking Corp. (collectively, the "Debtors"), debtors and

debtors-in-possession in the above-captioned chapter 11 cases (the "Bankruptcy Cases"), by

and through their undersigned proposed counsel, hereby move (this "Motion") for entry of

orders (i) enforcing the requirements of sections 542(a) and 543(b) of title 11 of the United

States Code (the "Bankruptcy Code"),and (ii) jointly administering the Bankruptcy Cases. In

support of the Motion, the Debtors submit the *Declaration of Widmarck Paul* annexed hereto

as <u>Exhibit C</u> (the "Paul Declaration").  In further support of the Motion, the Debtors

respectfully state as follows:

**JURISDICTION, VENUE, STATUTORY BASIS, EXTRAORDINARY RELIEF**

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This

matter is a core proceeding, within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court

is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief requested herein are sections 542, 543, and

105 of the Bankruptcy, and rule 1015 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

3.    The Debtors respectfully submit that, to the best of their understanding, none of

the relief sought in this Motion constitutes "extraordinary relief" as defined by Bankruptcy

Rule 6003.

## **PRELIMINARY STATEMENT**

4.      Banco Popular North America, Arthur Cab Leasing Company, Martin Bienstock (in his capacity as a NYC Marshal), and/or the NYC Taxicab & Limousine Commission are in possession, custody, or control of taxicab medallions, taxicab vehicles, and/or taxicab equipment belonging to the Debtors. An **immediate turnover** of this property is crucially important to the success of these chapter 11 cases.

5.      All of these entities received notice of the Debtors' bankruptcy filings on or about April 21, 2014, but none of them has turned over any property of the estates, or made arrangements for such turnover.  Accordingly, each of them—to the extent it holds or controls property of the Debtors' estates—is disregarding its affirmative duties under sections 542(a) or 543(b) of the Bankruptcy Code to turnover such property to the Debtors.

6.      Until the turnover takes place, the Debtors cannot operate their businesses, and are prevented from generating the revenues necessary to fund their reorganizations. Moreover, because the Debtors' financial obligations in connection with their medallions and taxicabs are continuing to accrue, there is a **small window of time** in which the Debtors must receive turnover of their medallions and taxicabs, or the possibility of their reorganizations will be lost. Accordingly, the entities listed above should not be allowed to further disregard, or delay complying with, the clear and unambiguous turnover requirements of the Bankruptcy Code.

7.      If sections 542(a) and 543(b) of the Bankruptcy Code are enforced, these chapter 11 cases will likely succeed.  If, however, theses mandatory requirements of Bankruptcy Code are not enforced, then the Bankruptcy Cases are certain to fail, the Debtors will be forced to liquidate, and none of their creditors—other than Banco Popular—will enjoy

any significant recoveries.

8.      Under these circumstances, it is necessary and appropriate for the Court to exercise its equitable powers under section 105(a) of the Bankruptcy Code to enforce the requirements of sections 542(a) and 543(b of the Bankruptcy Code, and to impose sanctions on those entities that fail to comply with those requirements.

## BACKGROUND[1]

9.      The Bankruptcy Cases where each commenced on April 21, 2015 (the "Petition Date").  Each Debtor is managing its estate and affairs as a debtor-in-possession.  No trustee has been appointed in any of the Bankruptcy Cases.

10.     The Debtors are New York City "yellow" cab companies.  Each Debtor owns two "mini-fleet" medallions (the "Medallions") issued by the NYC Taxicab & Limousine Commission (the "TLC"), two taxicab vehicles (the "Taxicabs"), and related taxicab equipment (the "Taxicab Equipment"). Each Debtors' pair of Medallions is worth approximately $2 million.

11.     The Medallions are subject to a secured loans from Doral Bank, in the original principal amount of $1.98 million per Debtor.[2] Under the applicable loan agreements, each Debtor is required to make a monthly interest payment to Doral Bank.

12.     Over the past few years, New York City yellow cab businesses, including the Debtors' businesses, have suffered due to, among other things, competition from the new "green" cabs, and from Uber and similar websites that permit passengers to  effectively "street

---

[1]      More complete background can be found in the Paul Declaration, which is attached hereto as <u>Exhibit C</u> and incorporated herein by reference.

[2]      The Debtors respectfully reserve the right to contest the validity, enforceability, and perfection of the Bank's security interests.

hail" non-medallion cabs from their phones. These developments have reduced the Debtors' revenues, and devalued their medallions.

13.    In addition, the Debtors have struggled to defend lawsuits aggressively pursued by two taxicab management companies, whose contracts the Debtors lawfully terminated. The Debtors believed that these plaintiffs' claims were legally unsound because the Debtors had the right, under TLC regulations, to terminate their contacts. Nonetheless, one of the plaintiffs, Arthur Cab Leasing Corp. ("Arthur Cab") obtained a judgment against two of the Debtors. In October of 2014, New York City Marshal Martin Bienstock (the "Marshal"), sized from the Debtors one Taxicab, including its Medallion and Taxicab Equipment.

14.    Notwithstanding these struggles, the Debtors were able to meet their financial obligations through the end of 2014. In January of 2015, however, each Debtor missed a single monthly payment to Doral Bank.

15.    At that time, Doral Bank was facing its own looming crises—including undercapitalization, FBI investigations, and bank fraud. Rather than providing the Debtors with time to resolve their missed payments (or to workout their debt), Doral Bank took near immediate steps to liquidate the Debtors' Medallions.

16.    On or about February 18, 2015, Doral Bank's agents stopped eight of the Debtors' taxicabs in the streets, and seized their Medallions and Taxicab Equipment. As a result of Doral Bank's actions, the Debtors' business operations ceased and their revenues were cut off, making it impossible for the Debtors to cure the missing payments to Doral Bank.

17.    On February 26, 2015, Doral Bank conducted a private auction of the Debtors' Medallions. On information and belief, the top bid at the auction was $980,000.00 per medallion ($9.8 million for the Debtors' ten medallions).

18.     On February 27, 2015, Doral Bank was closed by the Puerto Rico banking authorities, and placed under FDIC receivership. Banco Popular North America ("Banco Popular") is the successor in interest to Doral Bank's loans to the Debtors.

19.     Under TLC regulations, TLC approval is necessary to transfer the Debtors' medallions to any other party. As of the Petition Date, Banco Popular had not obtained such approval, and thus the Medallions remain property of the Debtors' estates.[3]

20.     Notice of the filing of the Debtors' bankruptcy petitions was provided to Banco Popular, Arthur Cab, the Marshal, and the TLC on April 21, 2015.  In addition, proposed counsel to the Debtors contacted counsel to Banco Popular, counsel to the TLC and the Marshal, to alert them to sections 542(a) and 543(b) of the Bankruptcy Code and request that they turnover of any Medallions, Taxicabs, or Taxicab Equipment in their possession, custody, or control. As of the date of this Motion, none of these entities has turned over the Debtors' property.

**REQUEST FOR ENFORCEMENT OF
BANKRUPTCY CODE SECTIONS 542(a) and 543(b)**

**I.      BASIS FOR RELIEF**

      **a.  <u>Bankruptcy Code Section 542(a)</u>**

21.     Section 542(a) of the Bankruptcy Code "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee." <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 205 (1983); see 11 U.S.C. § 524(a) ("[A]n entity, other than a custodian, **in possession, custody, or**

---

[3]     On March 18, 2015, the Debtors initiated a proceeding before the New York Supreme Court (King County) to enjoin Doral Bank and the TLC from transferring the Debtors' medallions. Case no. 503142/2015. At the time the Debtors commenced these Bankruptcy Cases, the New York Supreme Court had allowed Doral Bank to process papers with the TLC, but had temporarily enjoined any closing of the sale of the Debtors' medallions.

control, during the case, **of property that the trustee may use, sell, or lease under section**

**363** of this title . . . **shall deliver to the trustee,**[4] and account for, such property or the value of

such property, unless such property is of inconsequential value or benefit to the estate.")

(emphasis added).

22.      Under section 363 of the Bankruptcy Code, a trustee "**may use property of the**

**estate in the ordinary course of business** without notice or a hearing." 11 U.S.C. § 363(c)(1).

Accordingly, any entity (other than a custodian) that has possession, custody, or control of

estate property that a chapter 11 debtor may use in the ordinary course of its business, must—

upon notice of the filing of the debtor's chapter 11 petition—immediately turnover such

property to the debtor—unless such property is of inconsequential value or benefit to the

debtor's estate.

23.      Property "**repossessed by a secured creditor falls within this rule**, and

therefore may be drawn into the estate." <u>Whiting Pools</u>, 462 U.S. at 205 (emphasis added).

"While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold

a possessory interest in the property at the commencement of the reorganization proceedings."

<u>Id.</u>

### b.  <u>Bankruptcy Code Section 543(b)</u>

24.      Section 543(b) of the Bankruptcy Code requires a custodian to turnover to a

debtor-in-possession any property of such debtor held by or transferred to the custodian. <u>See</u>

11 U.S.C. § 543(b) ("A custodian **shall . . . deliver** to the trustee **any property of the debtor**

**held by or transferred to such custodian**, or proceeds, product, offspring, rents, or profits of

---

[4]          In a chapter 11 case, a debtor-in-possession has "all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106 (a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).

such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case") (emphasis added).

25.     The property that a custodian is required to turnover "includes property that was property of the debtor at the time the custodian took the property, but the title to which passed to the custodian." In re Carole's Foods, Inc., 24 B.R. 213, 214 n.1 (B.A.P. 1st Cir. 1982) (citations omitted).

### c.  Bankruptcy Code Sections 542(a) and 543(b) are Self-Executing

26.     Sections 542(a) and 543(b) of the Bankruptcy Code **do not require** that a debtor-in-possession take any action, file any motion, or obtain any order of the Court before the turnover obligation is triggered.  Rather, by their plain language, these turnover requirements are **self-executing**. See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 823 (B.A.P. 9th Cir. 2010) ("It has long been the determination of this panel that the turnover provisions of the Bankruptcy Code are to be self-effectuating."); Cornerstone Prods., Inc. v. Pilot Plastics, Inc. (In re Cornerstone Products, Inc.), 2007 Bankr. LEXIS 4101 (Bankr. E.D. Tex. Dec. 5, 2007) ("This affirmative obligation [under § 542(a)] is self-executing and does not require the holding of a hearing or the entry of an order by the bankruptcy court."). Accordingly, like the automatic stay, the turnover requirements arise automatically upon the commencement of a debtor's bankruptcy case.

### d.  Notice of Petition Creates Affirmative Duty to Turnover Property

27.     Sections 542(a) and 543(b) impose an **affirmative duty** on each entity in possession, custody, or control of property at must be turned over. See Sensenich v. Ledyard Nat'l Bank (In re Campbell), 398 B.R. 799, 811 (Bankr. D.Vt. 2008).  This affirmative duty arises automatically upon the entity's knowledge of the commencement of the case.

8

### e. **Bankruptcy Code Section 105(a)**

28.    Under section 105(a) of the Bankruptcy Code, bankruptcy court have broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. <u>See</u> 11 U.S.C. § 105(a).  Moreover, Bankruptcy Courts have the power to issue such orders *sua sponte*. <u>See</u> 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

29.    Under section 105(a) of the Bankruptcy Code, bankruptcy courts have the power to issue "any order" that is necessary to enforce the requirements of section 542 and 543 of the Bankruptcy Code, including imposing sanction on those entities that have notice of a debtor's bankruptcy filing but nonetheless willfully fail to turnover property of such debtor's estate. <u>See, e.g.</u>, <u>Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams)</u>, 25 C.B.C.2d 15, 127 B.R. 239 (B.A.P. 9th Cir. 1991) (imposing sanction where secured creditor failed to turnover repossessed automobile after notice of bankruptcy filing).

## II.    **RELEIF REQUESTED**

30.    The Medallions, Taxicabs, and Taxicab Equipment are property of the Debtors' estates.  Under section 363(c) of the Bankruptcy Code, the Debtors, as debtors-in-possession, have the right to continue to use this may use this property in the ordinary course of their businesses, without notice or a hearing.  Moreover, this property is clearly of consequential value and benefit to the Debtors' estates, because it is worth approximately $10 million and is indispensable to the Debtors' businesses and reorganizations. Accordingly, under section 542(a) and 543(b) of the Bankruptcy Code, the Medallions, Taxicabs, and Taxicab equipment

must be turned over to the Debtors.

31.      The immediate turnover of the Medallions, Taxicabs, and Taxicab Equipment is critically important to the success of the Debtors' reorganizations. If the Medallions are not turned over, the Debtors will be unable to operate their businesses in the ordinary course in bankruptcy, will have no revenues, and will be unable to make any payments to their creditors. Moreover, because the Debtors' financial obligations in connection with the Medallions continue to accrue (including payments due to Banco Popular) there is a **small window** of time in which the Debtors must receive turnover of the Medallions and Taxicabs, or it will quickly become impossible for them to reorganize.

32.      On April 21, 2015, Banco Popular, Arthur Cab, the Marshal and the TLC each received notice of the Debtors' bankruptcy filings.  From that date forward, **they each had an affirmative duty** to turnover any and all Medallions, Taxicabs, or Taxicab equipment in their possession, custody, or control.  Moreover, counsel to the Debtors expressly alerted Banco Popular, the Marshal, and the TLC to the Bankruptcy Code's turnover provisions, and requested that they turnover the Debtors' property.  To date, none of them has turnover over any property of the Debtors estates.  Accordingly, some or all of them is willingly violating the clear requirements of the Bankruptcy Code.

33.      No party should be permitted to knowingly disregard its clear and unambiguous obligations under the Bankruptcy Code—or to **intentionally delay turning over the Debtors' property**.

34.      The Debtors respectfully submit that, under the circumstances of these Bankruptcy Cases, it is necessary and appropriate for the Court to enforce the Bankruptcy Code, by requiring turnover of all estate property, and by imposing sanctions on any entity that

continues to disregard its turnover obligations. Specifically, the Debtors request that the Court enter an order:

- Requiring each entity (including a custodian) in possession, custody, or control of the Debtors' Medallions, Taxicabs, and/or Taxicab Equipment to turnover such property to the Debtors, within three business days of entry of the order; and

- Imposing sanctions on each entity (including a custodian) in possession, custody, or control of the Debtors' Medallions, Taxicabs, and/or Taxicab Equipment that fails to timely comply with the requirements of the order, in the amount of $500 per day, per Medallion impacted by such failure, from the date such entity received notice of the Debtors' bankruptcy cases through the date such entity turns over such property.

## REQUEST FOR JOINT ADMINISTRATION

### I.    BASIS FOR RELIEF

35.    Pursuant to Bankruptcy Rule 1015(b), "[i]f a joint petition or two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b). Where a court orders joint administration, Bankruptcy Rule 1015(c) provides that "while protecting the rights of the parties under the [Bankruptcy] Code, the court may enter orders as may tend to avoid unnecessary costs and delay." Fed. R. Bankr. P. 1015(c).

### II.    RELIEF REQUESTED

36.    The Debtors respectfully request that the Court jointly administer these Bankruptcy Cases under case no. 15-41787, the case number assigned to the case of Lomax

Hacking Corp, and enter an order granting the following additional relief:

- Authorizing the Debtors and the Clerk of the Court to maintain one consolidated docket, one file and one consolidated service list;

- Permitting combined notices to be sent to creditors and other parties in interest; and

- Authorizing the Debtors to file their monthly operating reports on a consolidated basis, provided that they disclose the disbursements for each individual debtor on a debtor-by-debtor basis and pay any fees due to the United States Trustee on a debtor-by-debtor basis.

37.     The Debtors respectfully submit that joint administration of these Bankruptcy Cases is permissible because Mr. Paul owns 100% of the outstanding voting shares of each Debtor, for his own account and not in a fiduciary or secured creditor capacity, and therefore the Debtors qualify as "affiliates" of one another. Joint administration is further appropriate because the factual and legal issues of that must be addressed in these cases are nearly identical, and the largest and most significant secured creditor, Banco Popular, is the same. Moreover, joint administration will ease the burden of these cases on the Court and creditors, and will enable the Debtors' estates to save son administrative expenses.

38.     Prior to filing this Motion, the Debtors provided a copy of the joint administration portion and their proposed order granting the same to the Office of the United States Trustee.  The form of proposed order attached hereto as <u>Exhibit </u>B reflects the U.S. Trustee's comments.

<b>NO PRIOR REQUEST</b>

39.     No prior motion for the relief requested herein has been made by the Debtors to

12

this or any other court.

## NOTICE

40.     A copy of this Motion will be provided to (i) the Office of the United States Trustee, (ii) all creditors listed on the Debtors' schedules of assets and liabilities, and (iii) those parties who have filed notices of appearance in the Bankruptcy Cases.  The Debtors respectfully submit that, under the circumstances, no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order, substantially in the form annexed hereto as <u>Exhibit A</u>, enforcing the requirements of sections 542(a) and 543(b) of the Bankruptcy Code, (ii) enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, jointly administering the Bankruptcy Cases, and (iii) grant the Debtors such other relief as is just.

Dated:   New York, NY
         May 2, 2015

THE LAW OFFICES OF JEREMY S. SUSSMAN

By: <u>/s/ Jeremy S. Sussman</u>
    Jeremy S. Sussman
    225 Broadway, Suite 3800
    New York, NY 10007
    (646) 322-8373

*Proposed Counsel for the Debtors*

**EXHIBIT A**

**Proposed Order Enforcing Turnover Requirements**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————— )
                                                    )
In re:                                              )    Chapter 11
                                                    )
    Lomax Hacking Corp.,             )    Case No. 15-41787 (NHL)
                                                    )
          *Debtor.*               )
                                                    )
———————————————————— )
                                                    )
In re:                                              )    Chapter 11
                                                    )
    Loup Hacking Corp.,              )    Case No. 15-41788 (NHL)
                                                    )
          *Debtor.*               )
                                                    )
———————————————————— )
                                                    )
In re:                                              )    Chapter 11
                                                    )
    Phanero Hacking Corp.,           )    Case No. 15-41789 (NHL)
                                                    )
          *Debtor.*               )
                                                    )
———————————————————— )
                                                    )
In re:                                              )    Chapter 11
                                                    )
    Sice Mois Hacking Corp.,         )    Case No. 15-41790 (NHL)
                                                    )
          *Debtor.*               )
                                                    )
———————————————————— )
                                                    )
In re:                                              )    Chapter 11
                                                    )
    Topush Hacking Corp.,            )    Case No. 15-41791 (NHL)
                                                    )
          *Debtor.*               )
———————————————————— )

**ORDER GRANTING DEBTORS' MOTION FOR ENFORCEMENT
OF BANKRUPTCY CODE SECTIONS 542(A) AND 543(B)**

Upon the motion dated May 2, 2014 (the "Motion")[5] of Lomax Hacking Corp.,

Loup Hacking Corp., Phanero Hacking Corp., Sice Mois Hacking Corp., and Topush Hacking

Corp. (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned

chapter 11 cases (the "Bankruptcy Cases"), for entry of an order, pursuant to section 105(a) of

the Bankruptcy Code, enforcing the requirements of sections 542(a) and 543(b) of the

Bankruptcy Code; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §

1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion

appearing good and sufficient, and no other or further notice being necessary; and opposition to

the Motion, if any, having been overruled or withdrawn; and the relief requested in the Motion

being in the best interests of the Debtors' estates and creditors; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor; it is

hereby

**ORDERED**, that the Motion is granted, to the extent set forth herein; and it is

further

**ORDERED**, that each entity (including a custodian) in possession, custody, or

control of the Debtors' Medallions, Taxicabs, and/or Taxicab Equipment shall turnover such

property to the Debtors, within three (3) business days of the date of this Order; and it is

further

---

[5]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

ORDERED, that each entity (including a custodian) in possession, custody, or control of the Debtors' Medallions, Taxicabs, and/or Taxicab Equipment that fails to timely comply with the requirements of this Order shall be sanctioned in the amount of $500 per day, per Medallion impacted by such failure, from the date such entity received notice of the Debtors' bankruptcy cases through the date such entity turns over such property; and it is further

ORDERED, that the Court shall retain jurisdiction over all matters with respect to this Order, including the enforcement hereof.

Dated: Brooklyn, New York
      May __, 2015

_____
**UNITED STATES BANKRUPTCY JUDGE**

**EXHIBIT B**

**Proposed Order Jointly Administering Related Cases**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————— )
                                                          )
In re:                                                    )    Chapter 11
                                                          )
 Lomax Hacking Corp.,                                )    Case No. 15-41787 (NHL)
                                                          )
    *Debtor.*                         )
                                                          )
———————————————————————— )
                                                          )
In re:                                                    )    Chapter 11
                                                          )
 Loup Hacking Corp.,                                 )    Case No. 15-41788 (NHL)
                                                          )
    *Debtor.*                         )
                                                          )
———————————————————————— )
                                                          )
In re:                                                    )    Chapter 11
                                                          )
 Phanero Hacking Corp.,                              )    Case No. 15-41789 (NHL)
                                                          )
    *Debtor.*                         )
                                                          )
———————————————————————— )
                                                          )
In re:                                                    )    Chapter 11
                                                          )
 Sice Mois Hacking Corp.,                            )    Case No. 15-41790 (NHL)
                                                          )
    *Debtor.*                         )
                                                          )
———————————————————————— )
                                                          )
In re:                                                    )    Chapter 11
                                                          )
 Topush Hacking Corp.,                               )    Case No. 15-41791 (NHL)
                                                          )
    *Debtor.*                         )
                                                          )
———————————————————————— )

**ORDER GRANTING DEBTORS' MOTION FOR**
**JOINT ADMINISTRATION OF RELATED CASES**

   Upon the motion dated May 2, 2015 (the "Motion") of Lomax Hacking Corp.,

Loup Hacking Corp., Phanero Hacking Corp., Sice Mois Hacking Corp., and Topush Hacking

Corp. (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned

chapter 11 cases (the "Bankruptcy Cases"), for entry of an order, pursuant to Rule 1015 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), jointly administering the

Bankruptcy Cases; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §

1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion

appearing good and sufficient, and no other or further notice being necessary; and opposition

to the Motion, if any, having been overruled or withdrawn; and the relief requested in the

Motion being in the best interests of the Debtors' estates and creditors; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor; it is

hereby

**ORDERED**, that the Motion is granted to the extent set forth herein; and it is

further

**ORDERED**, that the Bankruptcy Cases shall be jointly administered by this

Court under case no. 15-41787, the case number assigned to the case of Lomax Hacking

Corp.; and it is further

**ORDERED**, that one consolidated docket, one file and one consolidated

service list shall be maintained by the Debtors and kept by the Clerk of the United States

Bankruptcy Court for the Eastern District of New York; and it is further

**ORDERED**, that the consolidated caption of the jointly administered cases shall read as follows:

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Lomax Hacking Corp., *et al.*, | ) | Case No. 15-41787 (NHL) |
| | ) | |
| *Debtors*. | ) | Jointly Administered |
| _____ | ) | |

; and it is further

**ORDERED**, that combined notices may be sent to creditors of the Debtors' estates and other parties in interest, as applicable; and it is further

**ORDERED**, that the Debtors (i) may file their monthly operating reports on a consolidated basis, but shall disclose in such operating reports the disbursements for each individual debtor on a debtor-by-debtor basis and (ii) shall pay any fees due to the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest thereon on a debtor-by-debtor basis; and it is further

**ORDERED**, that the Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order.

Dated: Brooklyn, New York
        May __, 2015

_____
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit C**

Declaration of Widmarck Paul

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

─────────────────────────────────

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Lomax Hacking Corp., | ) Case No. 15-41787 (NHL) |
| | ) |
| *Debtor.* | ) |
| ─────────────────────────── | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| Loup Hacking Corp., | ) Case No. 15-41788 (NHL) |
| | ) |
| *Debtor.* | ) |
| ─────────────────────────── | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| Phanero Hacking Corp., | ) Case No. 15-41789 (NHL) |
| | ) |
| *Debtor.* | ) |
| ─────────────────────────── | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| Sice Mois Hacking Corp., | ) Case No. 15-41790 (NHL) |
| | ) |
| *Debtor.* | ) |
| ─────────────────────────── | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| Topush Hacking Corp., | ) Case No. 15-41791 (NHL) |
| | ) |
| *Debtor.* | ) |
| ─────────────────────────── | ) |

TO:     THE HONORABLE NANCY HERSHEY LORD,
         UNITED STATES BANKRUPTCY JUDGE

<u>**DECLARATION OF WIDMARCK PAUL**</u>

Widmarck Paul hereby declares and states as follows (this "Declaration"):

1.      Lomax Hacking Corp., Loup Hacking Corp., Phanero Hacking Corp., Sice Mois

Hacking Corp., and Topush Hacking Corp. (collectively, the "Debtors"), debtors-in-possession

in the above captioned chapter 11 cases (the "Bankruptcy Cases") are New York City "yellow"

cab taxi companies.

**OVERVIEW OF BANKRUPTCY CASES**

2.      I am the Debtors' owner and president.  I began in the taxicab business as a

driver, and slowly built up successful taxicab businesses.  My companies now own ten New

York City yellow cab medallions.

3.      Over the past few years, New York City yellow cab businesses, including the

Debtors, have been badly hurt by various unforeseeable developments, including competition

from the new "green" cabs, and from Uber and similar websites which permit riders to "street

hail" non-medallion cabs from their phones.  These developments have reduced our revenues,

and devalued our medallions.

4.      In addition, the Debtors have struggled to defend lawsuits aggressively pursued

by two companies that used to manage the Debtors' medallions, despite that fact that, under

TLC regulations, the Debtors had the legal right to terminate those management companies at

any time.

5.      Notwithstanding these struggles, the Debtors were able to meet their financial

obligations through the end of 2014.  In January of 2015, however, each Debtor missed a

**single monthly payment** to Doral Bank, who held liens on the Debtors' taxicab medallions,[6] and Doral Bank immediately brought our businesses to a screeching halt.

6.      Doral Bank was facing its own looking financial crises—including undercapitalization, FBI investigations, and bank fraud.  I believe it was for this reason that—rather than providing the Debtors with reasonable time to resolve their missed payments—Doral Bank took near immediate, aggressive steps to liquidate the Debtors' medallions.

7.      On February 18, 2015, Doral Bank's repo men forcibly stopped the Debtors' taxicabs in the streets and seized their medallions and taxicab equipment. Without the medallions, the Debtors' taxicabs could not be operated. Accordingly, Doral Bank's actions made it impossible for the Debtors to cure the missing payments to Doral Bank.

8.      On February 26, 2015, Doral Bank conducted a private auction of the Debtors' medallions.

9.      On February 27, 2015, Doral Bank was closed by the Puerto Rico banking authorities, and placed under FDIC receivership. Banco Popular North America is the successor in interests to the Debtors' medallion loans.

10.      The Debtors commenced these chapter 11 cases to prevent the loss of their medallions, to provide themselves with breathing room to operate their businesses (without the constant threat of being stopped by repo men), to cure the payments owing to Banco Popular, and to obtain court approval for a successful plan of reorganization.

11.      Any transfer of the Debtors' medallions to another party requires TLC approval—which Banco Popular has not yet obtained.  Accordingly, at the time these bankruptcy cases where filed, the medallions remained the Debtors' property.

---

[6]      I reserve the right to object to the validity, enforceability, and perfection of Doral Bank's liens.

12.     I am confident that, if the Debtors medallions, taxicabs, and taxicab equipment and turned over by Banco Popular and the other parties that are holding them, the Debtors will be able to cure all missing payments and propose a feasible plan of reorganization in only a few months.

13.     If however, Banco Popular refuses to or delays turning over the Debtors' property, the Debtors will likely be forced to liquidate in the near future.  If that happens, none of the Debtors' creditors—other than Doral Bank—will receive any significant recoveries in these chapter 11 cases.

## SIGNFICANT ASSETS

14.     Each Debtor owns two unrestricted "mini-fleet" medallions (the "Medallions") granted by the NYC Taxicab & Limousine Commission (the "TLC"). The Debtors' medallions are the most valuable type of medallions issued by the TLC.  The current market value for five pairs of mini-fleet medallions is approximately $10 million ($2 million per pair).[7]

15.     Each Debtor also owns two taxicab vehicles (the "Taxicabs") and related taxicab equipment (the "Taxicab Equipment"). The Taxicabs include Ford and Toyota Prius vehicles, and range in value depending on their make, model, year, and condition.  The aggregate value of the Taxicabs is approximately $71,000.00.

## SIGNIFICANT LIABILITIES

### I.     Medallion Loans

16.     Each Debtor's pair of Medallions is subject to a secured loan from Doral Bank in the original principal amount of $1.98 million (the "Medallion Loans"). The monthly

---

[7]     Doral Bank conducted a *private auction* of the Medallions on relatively short notice, and the highest bid at that auction was $9,800,000 for the Debtors' 10 medallions.  However, I strongly believe that the medallions could net over $10.5 million if sold at separate, *public auctions*, following a more robust marketing campaign.

payment due on each Medallion Loan is $9,487.50 (the "Monthly Payment").

## II.    Taxicab Loans

17.    Three of the Toyota Prius taxicabs owned by the Debtors are subject to secured auto loans from Toyota Financial Services ("Taxicab Loans"). The outstanding principal amount of each Taxicab Loan is approximately $23,500.

## III.    Suits by Former Management Companies

18.    Under TLC regulation §1-76, a medallion owner is permitted to designate an agent to operate its taxicabs.  The agent must be licensed by the TLC, and the designation may be revoked the medallion owner at any time, upon notice to the TLC. Agreements between medallion owners and agents are generally referred to as "management agreements" in the industry. TLC regulation §1-77 provides that management agreements cannot include provisions that supersede or impair the TLC regulations.

### a)  Arthur Cab Suit

19.    In May of 2010, two of the Debtors, Loup Hacking Corp. ("Loup") and Sice Mois Hacking Corp ("Sice Mois"), entered into a medallion management agreement with Arthur Cab Leasing Corp. ("Arthur Cab").

20.    In April of 2011, Loup and Sice Mois exercised their rights under TLC §1-76 to terminate the Arthur Cab management agreements. Despite this lawful termination, Arthur Cab sued Loup and Sice Mois for breach of contract, seeking to enforce a liquidated damages provision, allegedly included in the management agreement, trigger by the lawful termination of the agreements.

21.    In April of 2014, the New York Supreme Court awarded Arthur Cab judgments in the amount of $123,114.05 against Loup and Sice Mois (the "Judgments").

22.     The Debtors have appealed form the Judgements, and the matter is currently before the Appellate Division, Second Department.  I strongly believe that the Debtors will prevail on the appeal because (among other reasons), Arthur Cab's liquidated damages provisions were void under TLC regulations, unenforceable, and contrary to TLC regulations and public policy.

### b)  Napasei Management Suit

23.     In 2011, after terminating the Arthur Cab management agreements, four of the Debtors entered into management agreements with Napasei Management Corp. ("Napasei").

24.     After being sued by Arthur Cab, the Debtors realized the risk of being sued for terminating a management agreement, notwithstanding their rights under TCL regulations to terminate such agreements at any time. Accordingly, in February of 2013, the Debtors renegotiated the Napasei management agreements.  Among other things, the renegotiated management agreement gave both the Debtors and Napasei the right to terminate the management agreement on seven days' notice.

25.     In May of 2013, the Debtors exercised their rights, under TLC regulations **and** the renegotiated Napasei agreements, to terminate the Napasei agreements. Nonetheless, in June of 2013, Napasei sued, claiming that the Debtors fraudulently induced them to enter into the renegotiated management agreements. That suit is currently pending.

### IV.    Outstanding Payments to Drivers

26.     As explained above and in greater detailed below, in February of 2015 Doral Bank seized the taxicab Medallions and taxicab equipment from eight of the Debtors' vehicles. As a result, the Debtors' revenues were frozen, and the Debtors were unable to make payments due to their drivers for periods prior to the seizure.

## EVENTS LEADING TO BANKRUPTCY FILINGS

27.     The Debtors' chapter 11 cases resulted from a "perfect storm" of events, explained below, that impaired their businesses, eroded the value of their Medallions and caused them to each miss a single monthly payments to Doral Bank in January 2015, resulting the seizure of their Medallions and complete freeze of their businesses.

## I.     **Green Cabs**

28.     Historically, only medallion-bearing "yellow" cabs were permitted to pick up people in New York City in response to a "street hail" from a potential customer.  Due to the limited number of medallions issued by the TLC, yellow cab medallions became very valuable.  This value was an assets that yellow cab companies, including the Debtors, relied upon to refinance prior medallions loans, expand their businesses, and obtain liquidity for their operations.

29.     In 2013, a new category of taxicab medallions were created, green cabs, which have the right to pick up "street hail" passengers in the outer-boroughs and in Manhattan above East 96th and West 110th Streets. The green cabs significantly damaged the yellow cab businesses, by cutting into their revenues and devaluing their medallions.

## II.     **Uber**

30.     Yellow cab businesses were further eroded by the website Uber and similar websites.  These websites enable passengers to effectively "street hail" non-medallions taxis from their mobile devices, and permit anyone with a car, license, and iPhone to compete with yellow cabs for fares. Like the green cabs, Uber has negatively impacted the yellow cab

business by cutting into their revenues and reducing the value of their medallions.

### III.    <u>Legal Fees</u>

31.      Between 2011 and the Petition Date, the Debtors incurred significant legal costs

defending the suits brought by their former management companies (explained above), which

made it further difficult to meet their financial obligations.

32.      In October of 2014, Arthur Cab took steps to enforce the judgment it had

obtained, and through a New York City marshal sized one Taxicab and Medallion belonging to

Loup Hacking Corp. As a result, Loup Hacking Corp was been forced to pay all the expenses

of two medallions from the income of one medallion.

### IV.    <u>Missed Payment to Doral Bank; Seizer of Medallions</u>

33.      As a result of all of the events listed above, in late 2014 the Debtors had

increasing difficulty meeting their financial obligation.  In January 2015, the Debtors each

missed a single monthly payment due to Doral Bank.

34.      Unfortunately, Doral Bank was facing financial problems of its own: it was

massively undercapitalized, dealing with FBI bank fraud investigations, and struggling to

avoid being shut down.  I believe that for this reason Doral Bank took steps to immediately

liquidate the Debtors' medallions—in a desperate attempt to bring liquidity back into the bank.

35.      On or about February 18, 2015, Doral Banks agents forcibly stopped eight of

the Debtors' cars in the streets and seized their Medallions and taxicab equipment. They also

seized several cars.

36.      On February 26, 2015, Doral Bank conducted a private auction of the

Medallions.  The top bid at that auctions $980,000 per medallions ($9.8 million total for the

Debtors' ten Medallions).

37.    The following day, on February 27, 2015, Doral Bank was closed by the Puerto Rico banking authority, and placed into receivership with the FDIC.

38.    Any transfer of medallions requires TLC approval, which Banco Popular has not yet obtained. Prior to the commencement of these Bankruptcy Cases, the New York Supreme Court temporarily enjoined Banco Popular and the TLC from closing the auction sale and transferring the Debtors' Medallion. Accordingly, as of the commencement of these Bankruptcy Cases, the Medallions remained Debtors' property.

### BANKRUPTCY FILINGS

39.    The Debtors commenced these chapter 11 cases, on an emergency basis, to prevent the loss of their medallions, to provide the Debtors with breathing room to operate their businesses, to cure the payments owing to Banco Popular, and to obtain court approval for a successful plan of reorganization.

40.    The Debtors plan on using the chapter 11 process and their rights under the Bankruptcy Code to seek turnover of their Medallions and equipment, resume their business operations, and propose a plan of reorganization that will provide for the full payment of all creditors over time.

41.    I am confident that, if Banco Popular, Arthur Cab, the Marshal and/or the TLC turn over the Debtors' Medallions, Taxicabs, and Taxicab Equipment, the Debtors will be able to cure all missing payments, and propose and confirm a feasible plan of reorganization in only a few months.

**FIRST DAY MOTION**

42.    Concurrently with this Declaration, the Debtors will file the *Debtors' First Day Motion for (I) Enforcement of Bankruptcy Code Sections 542(a) and 543(b)*, and *(II) Joint Administration of Related Cases* (the "First Day Motion").

## I.    <u>Joint Administration</u>

43.    Under the First Day Motion, the Debtors will request that the Court jointly administer their chapter 11 cases under case no. 15-41787, the case number assigned to the case of Lomax Hacking Corp. The Debtors will request that one consolidated docket, one file and one consolidated service list shall be maintained by the Debtors and kept by the Clerk of the Court, and that combined notices may be sent to creditors and other parties in interest. In addition, the Debtors will request authority to file their monthly operating reports on a consolidated basis, provided that they disclose the disbursements for each individual debtor on a debtor-by-debtor basis and pay any fees due to the United States Trustee on a debtor-by-debtor basis.

44.    I believe that joint administration is of the Debtors' chapter 11 cases is necessary and appropriate because the factual and legal issues of that must be addressed in each case are nearly identical, and the largest and most significant secured creditor, Banco Popular, is the same and each case.  In addition, joint administration will ease the burden of these cases on the Court and creditors, and will enable the Debtors estates to save administrative expenses.

## II.    <u>Enforcement of Turnover Provisions</u>

45.    Under the First Day Motion, the Debtors will request that the Court exercise its powers under section 105(a) of the Bankruptcy Code to enforce the clear and unambiguous turnover requirements of sections 542(a) and 543(b) of the Bankruptcy Code (the "Turnover

Requirements"). **This request is critical of the success of these chapter 11 cases**: If the Turnover Requirements are enforced, the Debtors will have a high chance of successfully reorganizing. If, however, the parties in possession of the Debtors' Medallions, Taxicabs, and Taxicab Equipment are permitted willfully disregard the Bankruptcy Code's turnover rules, the Debtors will have no hope of reorganizing and will be forced to liquidate.

46.    The Medallions must be turned over to the Debtors **immediately,** or the Debtors will be unable to operate their businesses in the ordinary course in bankruptcy, will have no source of revenues, and will be unable to make any payments to their creditors. Moreover, because the Debtors financial obligations in connection with the Medallions continue to accrue (including payments due to Banco Popular) there is a **small window of time** in which the Debtors must receive turnover of the Medallions and Taxicabs, or possibilities for reorganization will quickly diminish.

47.    Under the First Day Motion, the Debtors request that the Court impose sanctions of $500 per medallions per day on any entity who willfully disregard the requirements of sections 542(a) and 543(b) of the Bankruptcy Code. By the time the Court hears the First Day Motion, all entities in possession, custody, or control of the Medallions will have had two-

week's notice of the bankruptcy filings, which is more than enough time to comply with the bankruptcy code's requirements.

      *I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.*

Executed on May 1, 2015.

By: _____
             Widmarck Paul